170 So.2d 737 (1965)
Clarence HARNESS, and Ozia Harness, Wife of Clarence Harness, and Jewrel Harness, Sr., for and on behalf of his minor children, Jewrel, Rene, and Jacklyn Harness
v.
TOYE BROTHERS YELLOW CAB COMPANY, Ralph H. Radecker Jr., Logan Cab Company, Talmage Moses, and XYZ Bonding Company.
No. 1638.
Court of Appeal of Louisiana, Fourth Circuit.
January 11, 1965.
*738 Anthony C. D'Antonio, Metairie, and Alvin W. LaCoste for plaintiffs-appellees.
William W. Messersmith, III, New Orleans, for Toye Bros. Yellow Cab Co., defendant-appellant, and Ralph Radecker, Jr.
Robert J. Pitard, New Orleans, for Talmage Moses, Logan Cab Company and Nola Cabs, defendants-appellees.
Before McBRIDE, SAMUEL and HALL, JJ.
HALL, Judge.
This case grows out of a collision between a taxicab owned and operated by Logan Cab Company and a taxicab owned and operated by Toye Brothers Yellow Cab Company which occurred at approximately 7:30 P.M. on March 31, 1961, in the intersection of Simon Bolivar Boulevard and Earhart Boulevard in the City of New Orleans. Ozia Harness, a passenger in the Logan cab, was injured in the accident and brought suit for damages against both cab companies, both cab drivers, and Nola Cabs, Inc., the bondsman of Logan Cab Company. Her husband, Clarence Harness, joined in the suit claiming reimbursement for medical and other expenses.
Her son, Jewrel Harness, Sr., also joined in the suit against the defendants seeking damages for personal injuries for and on behalf of his three minor children who were passengers in the Logan cab along with their grandmother, Ozia Harness.
Judgment was rendered in favor of Ozia Harness for $750.00 together with interest and costs against Toye Brothers Yellow Cab Company alone. All other demands were dismissed. Toye Brothers Yellow Cab Company filed the only appeal. No answers to the appeal were filed.
The case involves purely a question of fact, and the sole and only issue is which vehicle had the green light?
Simon Bolivar Boulevard at its intersection with Earhart Boulevard is a one-way street for traffic proceeding in an uptown direction. Earhart Boulevard is a one-way street for traffic going toward the river. They intersect at right angles. The intersection is controlled by traffic lights.
Prior to the accident the Logan cab in which Ozia Harness was a passenger was travelling in an uptown direction on Simon Bolivar Boulevard, while the Yellow cab was being driven on Earhart Boulevard in the direction of the river. The two cabs came into collision in the center of the intersection.
There were five witnesses to the accident, viz., the plaintiff, Ozia Harness; the driver of the Logan cab; a Mrs. L. E. Thompson; the Yellow cab driver; and a Mrs. Ruth Lavin.
The plaintiff, Ozia Harness, testified that when the Logan cab in which she was riding approached the intersection it stopped for a red light "and when the light went off we came and started up on Simon Bolivar and then a Yellow cab came down Earhart Boulevard and ran into the Logan cab." She further testified that the Yellow cab ran into the center of the side of the Logan cab.
Talmage Moses, the driver of the Logan cab, testified that he was proceeding uptown on Simon Bolivar and when he neared the intersection of Earhart Boulevard, the light at the intersection facing him changed to red and he came to a stop; that he was stopped for 30 seconds or more and that when the light changed to green in his favor he started into the intersection. He further testified that he looked to his right out Earhart Boulevard and he saw some cars coming about 100 feet away but figured they would stop and they did; but as he got into the intersection he heard some "skid-marks" and tried to swing away to the left but was unable to avoid being hit; that the Yellow cab hit him at the right front door and he went up in the neutral ground of Simon Bolivar, put on his brakes and came to a stop.
*739 Mrs. L. E. Thompson testified that she was standing at the corner of Simon Bolivar and Clio Street, one block uptown from the intersection; that she saw the Logan cab stopped at the intersection; that she saw the Logan cab pull out into the intersection; that she saw the Yellow cab "running fast" and saw it strike the Logan cab and knock it onto the neutral ground. She testified she couldn't see the traffic light at the intersection, but that fact is explained by proof that none of the lights face uptown.
Ralph H. Redecker, Jr., driver of the Yellow cab, testified that the light had been green in his favor for one-half block before the intersection; that he was going 25 miles per hour and kept the light continuously in view; that he entered the intersection on the green light; that the Logan cab came from around the side of a bus which was stopped at the red light facing traffic on Simon Bolivar Boulevard and ran into him approximately in the center of the intersection; that he never saw the Logan cab until it entered the intersection; that he put on his brakes and turned to the right in order to avoid the accident but the Logan cab hit him and then proceeded up the neutral ground and came to rest about 150 feet from the point of impact; that the Yellow cab remained in the intersection headed in an uptown direction.
Mrs. Ruth Lavin, who was a passenger in the Yellow cab, testified that the Yellow cab was going about 25 miles per hour; that the light was green in its favor; that the Yellow cab was about two feet into the intersection when the Logan cab shot out from the left side of the parked bus at better than 40 miles per hour and ran into the Yellow cab. Mrs. Lavin testified on cross-examination that she had been injured in the accident; that she never made any claim on Nola Cabs, Inc. or Logan Cab Company, and that she had settled all of her differences with the Yellow Cab Company.
The trial judge in his reasons for judgment commented on the evidence in part, as follows:
"The Yellow cab driver and his passengers say the Yellow cab had the green light, and Talmage Moses and the passengers in his cab say that he had the green light.
"The court must consider the testimony of the passengers in the Moses' cab and must consider the testimony of L. E. Thompson (sic).
"The plaintiff, the passenger in the Moses cab, and L. E. Thompson (sic), in addition to the driver of the cab, all testified unequivocallyand there was no contradictionthat Talmage Moses stopped his cab.
"Now the testimony is that the Yellow cab did not stop. Miss Ruth Lavin testified that the Moses cab was travelling forty miles an hour at the time of the impact. The Court, of course, must realize that if Moses was stopped it was impossible, no matter what type of automobile he had, to get up to a speed of forty miles an hour in a distance of about fifteen feet.
"The Court must therefore conclude that Miss Lavin was mistaken, and, if the Court concludes Miss Lavin was mistaken in the speed at which the Moses cab was travelling, the Court must also conclude Miss Lavin is mistaken with reference to the color of the light at the time of the accident.
* * * * * *
"The Court, therefore, from all the evidence in the case, must decide that the green light was in favor of Talmage Moses and that he had the green light at the time of the accident. * * *"
The trial judge's determination in matters involving purely issues of fact will not be disturbed in the absence of manifest error. Ferguson v. Belcher and Son, 230 *740 La. 422, 88 So.2d 806; Second Church of Christ, Scientist v. Spencer, 230 La. 432, 88 So.2d 810. We find no manifest error in the conclusions reached by the trial judge. In fact, we agree with them.
Appellant contends that the trial court committed manifest error in view of the physical facts, coupled with the Logan cab driver's own testimony. The driver, Moses, testified that he entered the intersection from a stop at about five miles per hour. After the impact Moses' cab veered sideways, jumped the curb of the neutral ground flattening both left tires, then straightened out and proceeded 150 feet up the neutral ground before coming to rest. Appellant contends that these physical facts lend credence to Miss Lavin's testimony that Moses was speeding in excess of 40 miles per hour. In our opinion, what happens to an automobile after the impact is entitled to little weight in determining the speed of the car before the impact. Too many things may happen, and too many forces are involved. In the instant case there is no contradiction of the testimony that Moses had stopped his car before entering the intersection. The injured passenger's testimony to that effect may be considered as unbiased, since she had sued both cab companies and stood to recover against either one or the other, and Mrs. Thompson was a stranger to all parties and had no interest in the case whatsoever.
Appellant contends in the alternative that the award of $750.00 to Ozia Harness is excessive. The amount awarded is for pain and suffering only, since no special damages were proved. Plaintiff suffered a muscular strain in the low back region, as well as multiple contusions. X-rays revealed that she had a pre-existing arthritic condition of the spine, and while the record shows there was no aggravation of this condition as a result of the accident, the medical testimony was to the effect that the arthritis prolonged her recovery. She was seen twice by Dr. Isaacson, who testified that in his opinion she should have recovered in about two weeks. However, her own testimony, and that of her sister-in-law who took care of her, was that she was confined to bed for about three months and still had trouble doing her housework at the time of the trial.
The awarding of damages is largely in the discretion of the trial judge, and the amount awarded will not be disturbed unless there is a clear abuse of discretion. Hampton v. Security Storage and Van Company, La.App., 148 So.2d 788. We find no reason to decrease the award.
For the foregoing reasons the judgment appealed from is affirmed, costs of both courts to be borne by appellant.
Affirmed.