REID, Judge.
This is a damage suit brought by Atley D. Walker against National Union Fire Insurance Company of Pittsburgh, Pennsylvania, City Rentals, Inc., Carter Distributing Company, Inc., and William Damman, as a result of an accident alleged to have happened on August IS, 1963 at, or about, 9:15 P.M. on Lukeville Lane in the community of Lukeville, Parish of West Baton Rouge, State of Louisiana, involving plaintiff, a pedestrian proceeding west on said Lukeville Lane, west of the railroad trade and a Ford truck owned by City Rentals, Incorporated, being used by Carter Distributing Company, Inc., driven by William Damman, an employee of said Carter Distributing Company, Inc., and acting within the scope and during the time of his employment, and which was insured by Na *450 tional Union Fire Insurance Company of Pittsburgh, Pennsylvania. Lukeville Lane is commonly known as “back Brusly.” Defendants filed an answer denying any liability, denying that an accident occurred as alleged, admitting the ownership of the truck and the insurance policy issued by National Union Fire Insurance Company. They further averred that on information and belief plaintiff sustained certain minor contusions and abrasions as a result of being engaged in a fight, and the said injuries were not the result of any collision. They further plead contributory negligence.
The case was duly tried and the Lower Court rendered judgment in favor of the defendants, rejecting plaintiff’s demands.
Plaintiff has appealed from this decision herein.
The issues in this case are factual and wc will briefly review the facts. Plaintiff testified that he was walking west on Luke-ville Lane from his home to that of his aunt. He noticed car lights coming from his rear and he stepped over on the edge of the shoulder of the road so that the vehicle could pass him. He alleged that he was struck by the vehicle and twirled around, falling into a ditch by the side of the road where he sustained the injuries complained of. He did not know whether it was a car or a truck, and could not identify the driver of the vehicle that he alleged struck him. He got up from the ditch and went some 20 feet to the home of his aunt where he informed them of the accident. He and his cousin, Leroy Washington, then drove in Washington’s car looking for the vehicle which had struck him. A short distance from the scene of the accident they came up on some boys who informed them that it was a Busch Bavarian Beer truck and told them the direction in which it had gone. They went a short distance to Seafood House, a combination bar and restaurant where they found a Busch Bavarian truck, and obtained the license number of tlie truck. They both testified that the truck was still warm from having been used recently. They then returned to plaintiff’s home and informed his parents who advised them to report it to the police.
They went to the home of Mr. Clifford Thibodeaux Sr., a deputy sheriff in Brusly. He in turn called the jail and two deputies came out to make an investigation, namely, Elmore Andre, and Gerald Bergeron. The three deputies, accompanied by plaintiff and Washington, went to the alleged scene of the accident and made an investigation, looking for tire marks, or skid marks, particularly on the shoulder of the road, but were unable to find any evidence. Deputies Andre and Bergeron located the truck by the license number given them and found it at the Carter Distributing Company terminal. Both deputies examined the truck several times with their flashlights but were unable to find any mark which would indicate that it had been involved in an accident, except two old dents. There were no freshly dust rubbed places on it. Both deputies testified that defendant Damman had been drinking but they did not say that he was drunk. The interview with him took place sometime after the alleged accident. Deputy Andre testified that Damman denied hitting anyone and admitted he had been in that neighborhood earlier. Deputy Bergeron testified that Damman first denied he was in the vicinity but later admitted he was there earlier.
Leroy Washington testified that when he went to the scene of the accident with the two officers he did see tracks where an automobile or truck had passed over the shoulder. This is in contradiction with the testimony of the two deputies. Considering his close relationship to the plaintiff, and his interest in the outcome of this suit we feel that the Court properly disregarded his testimony.
The next day Chief Deputy LeFeaux took over the investigation and discussed the matter with defendant Damman. Deputy LeFeaux testified that Damman admitted that he was in the vicinity of the scene of the accident the evening before, but he *451 did not specify what hour, nor did Deputy LeFeaux ever advise Mr. Damman when the accident allegedly occurred.
One witness, Ethel Lee Crain, testified that she saw a truck which she called “Busch Venarían”, pass down this road that night. She did not see the accident and knew nothing of the details of it.
Both Damman and his wife took the Stand and denied having any accident with anyone on Lukeville Lane the night in question. Mrs. Damman testified she followed her husband 200 or 300 feet to the rear from the Town and Country Lounge, just a couple of miles north of Donaldsonville until he got to the Seafood House. She was driving the family car, having been fishing all day, and had agreed to meet her husband at this location and follow him on into the Carter Distributing Company terminal. They both testified that he stopped at Brown’s Cafe to leave some cups and she stopped right behind him. They proceeded to the Carter Distributing headquarters, left the truck and proceeded on home. They further testified that they were in the habit of meeting at designated places and she would follow him home, particularly after she had been fishing. Dam-man testified that he never knew of a Luke-ville Lane but had always called the road “back Brusly.”
We believe one of the determinative facts in this case is the uncontradicted testimony of Mr. Damman that his truck had mirrors extending approximately one foot out on each side of the truck, and that had he struck any one the mirror would have shown the damage. There is no evidence of any damage to the mirrors.
 The other fact which we feel determinative of the issues is the failure of the plaintiff to produce any of the boys who were supposed to have told him about the Busch Bavarian truck and pointed out the direction in which it was traveling. It seems odd that with all the investigation that was made that night no one ever informed the deputies of these boys, or is there any showing that any attempt was made to locate them to have them testify. In a small community like this we do not see why they did not produce the boys and have them corroborate the testimony.
“The failure of plaintiff to tender material witnesses, whose testimony would have made clear that which was vague and uncertain, or to explain plaintiff’s inability to produce such witnesses should be construed most strongly against the plaintiff.” Glover v. Henry, La.App., 107 So.2d 558.
Plaintiff concedes in his Brief that the crux of the case was the evaluation of the evidence and the credibility of the witnesses. In this respect the finding or the decision of the Trial Court on factual issues will not be disturbed unless manifestly erroneous. See Harness v. Toye Brothers Yellow Cab Company, La.App., 170 So.2d 737; Ferguson v. Belcher and Son, 230 La. 422, 88 So.2d 806; Boyle v. Travelers Insurance Company, La.App., 157 So.2d 471, writs refused 245 La. 574, 159 So.2d 286.
Plaintiff always has the burden of proof in any case, and must establish his claim to a legal certainty by a reasonable preponderance of the evidence. See Bryant v. Johnson, La.App., 140 So.2d 758.
While the Learned Judge of the Lower Court did not file written reasons for his judgment, and decided the case from the Bench, we fail to find where he was manifestly erroneous and feel that his decision was based upon the failure of the plaintiff to carry the burden of proof.
For these reasons the judgment of the Lower Court is affirmed.
Affirmed.