SAVOY, Judge.
Suit was brought by and in behalf of the survivors of the wrongful death of their mother, killed in an intersectional collision at Opelousas, Louisiana, on March 19, 1964.
Insofar as is pertinent to this appeal, plaintiffs’ petition alleges that at about S :35 A.M. defendant’s driver was proceeding east on Vine Street; the decedent was proceeding north on Academy Street. The intersection of Vine and Academy Streets is controlled by a traffic light. Defendant’s driver ran a red light and collided with the decedent’s vehicle, thus causing her death.
Defendants answered the petition, denying the material allegations, and taking the position that it was decedent who had run the red light. Alternatively, the decedent’s contributory negligence was pleaded.
Three other persons, Joseph Citizen, Joseph E. Jordan, and John R. Victorian, intervened in the suit, as against plaintiffs or defendants, or both, claiming damages to their respective automobiles which were parked at the scene of the accident
Trial was had on the merits, and the lower court held for plaintiffs, granting certain monetary awards to them and to the three intervenors against defendants, assigning written reasons therefor.
From that judgment defendants have appealed suspensively.
The amounts of intervenors’ damages were stipulated. No argument is raised in either plaintiffs’ or defendants’ briefs regarding quantum of damages, and the lower court’s award appears neither inadequate nor excessive. The sole isue for decision on this appeal is the question of which driver was at fault. Each side contends it was the other’s driver who ran the red light, and it is on that question alone that a decision in the instant case must rest.
*672 The record shows that Vine Street is a one-way paved Street going east and west within the City of Opelousas and is a part of U. S. Highway 190; Academy Street is a two lane paved street going north and south. The accident occurred just shortly after the break of dawn, and vehicles were still using their lights; there had been a drizzling rain intermittently throughout most of the night, and the pavement was wet. The decedent was driving a 1957 Buick sedan automobile north on Academy Street; defendant’s driver was driving a truck-trailer combination, which was loaded with lumber weighing about forty-eight thousand pounds, east on Vine Street. As stated before, the intersection of Vine and Academy Streets was controlled by a traffic light.
The testimony of the various witnesses is conflicting.
J. Y. Dupre, the investigating police officer, testified on direct examination that Paul Griffin, the driver of the truck, told him that just before he got to the intersection he had the green light, it changed to caution, and just before he got into the intersection it changed to red, but he could not stop. On cross-examination, he testified that Griffin told him he had been travelling about 20 or 25 miles per hour; the speed limit is 30 miles per hour; he found nothing in his investigation to reveal that Griffin had been exceeding the speed limit; what Griffin actually told him was that Griffin was about 20 feet from the light, which was suspended over the center of the intersection, at the time the green light changed to caution, the implication being that Griffin was about 10 feet from the edge of the intersection at that time; the collision occurred in the southeast quarter of the intersection.
Armand Stelly, Jr., testified that at the time of the accident, he was working at a filling station on Vine Street about one-half a block away from Academy Street; he was out in front of the station at the cash register; as he started to walk back to the station from the cash register, he heard the noise of the accident; he immediately turned toward the intersection and observed that the traffic light was red for traffic on Vine Street. He had observed the defendant’s truck as it passed his station, and estimated its speed at about 25 to 30 miles per hour. On cross-examination, he stated he had not observed the traffic light as the truck approached the intersection, but restated his contention that the light was red for Vine Street traffic when he turned toward the intersection after hearing the noise of the collision.
Elizabeth Charles, who lives approximately a block and a half across a vacant area from the intersection, testified that she was awake at the time of the accident and was in bed in her home; when she heard the sound of the collision, she raised up and looked out of her window and observed that the traffic light was red for traffic on Vine Street and green for traH fic on Academy Street. On cross-examination, she admitted that there were some Oak trees right along Academy Street between the intersection and her house, and she had to look through the top of her window since the bottom part was covered by cafe curtains, but she maintained her position regarding the traffic light insofar as concerns her observance after hearing the sound of the collision and looking out of her window.
A1 Norton, a brother-in-law of the decedent, testified that he went to the scene of the accident after it had occurred, and while there, talked to Paul Griffin, who stated to him that the light was red for Vine Street traffic at the time Griffin entered the intersection. On cross-examination, he stated that Griffin also told him the light changed just before Griffin got to the intersection.
James Edwards testified that he went to the scene of the accident after it had occurred, and that he spoke to Paul Griffin, who told him the light had changed but *673 he was too close to stop, but he did not say what color the light was.
Ernest Closton testified that he had also gone to the scene of the accident, and in talking to Griffin, Griffin stated to him he was sorry for what had happened, and he had run the light. On cross-examination, he stated Griffin had not told him what color the light was when he went into the intersection.
Donald Ray Sittig testified for defendants. He was a witness to the accident, and was standing alongside the intersection. He stated that as the truck was passing an establishment known as The Ranch, which is located on Vine Street and is approximately one-half a block from the intersection, he noticed the, traffic light was green for traffic on Vine Street. He stated further he also saw the decedent’s automobile approaching the intersection on Academy Street, and, realizing a collision was imminent, he then ran to a position of safety. He stated also that the truck was right at the intersection when he realized there would be a collision. It does not appear, however, that this witness actually observed the traffic light itself at any time after he • saw the truck approaching some half a block away. He did not see the actual collision, since he was in the process of running away from the scene for his own safety.
Paul Griffin, driver of the truck, testified and stated he was travelling in fourth gear, his speed being approximately 20 miles per hour. He stated he saw the traffic light turn green for Vine Street traffic as he approached the intersection, and estimated that he was about a block from the intersection at the time. He stated further that when he got about 20 feet from the light itself, that is, from’ the approximate center of the intersection, the light changed from green to caution and he knew it would then change to red, but he also had the right-of-way under those circumstances. He testified he did not see the decedent’s automobile at any time prior to the actual collision. He denied having told any of the other witnesses he had run the red light or that the light had■turned to red before he reached the intersection. He stated that, while it appeared it was about to rain, it had not yet rained and the pavement was dry. This is contrary to what was testified to by other witnesses. He estimated there was a time lapse of about three or four seconds between the time he saw the light turn to caution and the actual collision.
From an examination of the testimony, it is quite apparent that there is a very close question of fact involved. However, since the lower court viewed and heard the witnesses, the judgment of that court should be given great weight on purely factual issues, and should not be disturbed unless manifestly erroneous. The lower court in the instant case concluded that defendant’s driver was negligent, and the decedent was free of contributory negligence. We cannot say that those conclusions were manifestly erroneous, taking the evidence as a whole, despite the contradictions and conflicts therein.
The manifest error rule has been applied to conflicting fact situations arising from intersectional collisions. Harness v. Toye Brothers Yellow Cab Company (La.App., 4 Cir., 1965), 170 So.2d 737; and Schexnayder v. Martin (La.App., 4 Cir., 1963), 150 So.2d 616.
Defendants have cited certain cases ' in their brief which we have examined. We find them inapplicable here for the reason that certain facts were apparent and available to the court which are not so in the instant case. For the same reason, no purpose would be setved by a detailed discussion of those cases.
For the reasons assigned, the judgment of the lower court is affirmed, all costs of this appeal being assessed against defendants-appellants.
Affirmed.