SARTAIN, Judge.
This is a workman’s compensation suit in which the claimant, Louis Ike Sr., seeks to recover for an alleged injury sustained while in the employ of Jones and Farrens, Inc. Jones and Farrens, Inc., and their workmen’s compensation insurer, Home Indemnity Company, prosecute this appeal from a judgment granting plaintiff maximum workmen’s compensation benefits of $35.00 per week for a period of 400 weeks, in addition to outstanding medical expenses, less previous compensation payments. Plaintiff has also appealed on the ground that the trial court erred in not assessing penalties and attorney’s fees pursuant to LSA-R.S. 23:1201.2.
On November 19, 1965, plaintiff, age 45, was employed by Jones and Farrens, Inc. as a common laborer. Plaintiff sustained an injury while in the process of pushing a wheelbarrow laden with tools, and described the accident in the following fashion:
“Q. Will you explain to the Court how it happened ?
A. Yes, ma’am. I were on my way, was picking up tools and I rolled my wheelbarrow and it had been a big rain and had to cover up the slab where they poured concrete, and after we had done got through with that I walked on my way to the tool shed and I picked up the wheelbarrow and put it over inside the first track and on my knee with some shovels in it and I aimed to bump the wheelbarrow to make it jump the track and my foot slipped and I went over the wheelbarrow and fell over inside the next track. The wheelbarrow struck me in my left side.”
The above quoted account of the accident is explicitly corroborated by a co-employee, *205 Wilfred McNeilly, who was present and observed the incident. George Nettles, who was in the process of storing a “shoulder tool” stated:
“When I looked Ike was on the ground with the tools piled up around him, he was down, had done fell. We helped him up and got the wheelbarrow, carried it on and put it up in the tools, and he began complaining then.”
Ike reported to the home of John Farrens the next day, was in pain, informed Farrens of this fact and left for home at twelve noon. Plaintiff continued to attempt to perform his duties until November 29, 1965, at which time he was working with difficulty at a subpar rate of speed with a small chip hammer. Ike then proceeded to the office of Miss Anita Cottle, secretary for Jones and Farrens, who sent him to Dr. C. R. Chesnutt, the company doctor.
Dr. Chesnutt’s examinations revealed that plaintiff had a lumbar sprain, an arthritic condition of the back, and prostate difficulty. Dr. Chesnutt testified that the cause of the type arthritis with which Ike is afflicted is unknown, but that “trauma would certainly bring it to his attention, make his back hurt pretty bad.”
On December 1, 1965, Dr. Chesnutt sent the following note to Jones and Farrens, Inc.:
“Strain of back 11-19 & 11-29. Also advanced arthritis of spine which will delay the recovery. Will wear brace and have physical therapy and pain pills & should be able to return to work 12-6 with no strenuous exertion at least 6-8 weeks. Will be able to drive trucks. Has possibility of Ruptured Disc. We will check this.”
On December 3, 1965, Ike was examined by Dr. Howard Hansen who testified that although he did not ascertain the precise cause of the back trouble, there was a sprain of his lumbar spine and a contusion of the left inguinal area. At that time, Dr. Hansen’s opinion was that plaintiff was totally disabled to work as a laborer.
On January 11, 1966, a hernia was discovered by Dr. Chesnutt who then referred Ike to Dr. Sabatier. The hernia was found to be congenital and it is a matter of conjecture as to whether or not it was precipitated by the accident. Dr. Sabatier treated plaintiff for an acute low back sprain until February 8, 1966 at which time Ike underwent surgery for repair of the hernia. Ike was discharged on February 17, 1966 and the operative wound healed without incident. Dr. Sabatier last examined plaintiff on April 27, 1966, at which time he pronounced him fit to return to work without any significant disability. Permanent disability was not anticipated by Dr. Sabatier, but he did, according to Ike’s testimony prescribe further treatment for the back sprain:
“Q. When he discharged you were you still taking pills or using any kind of treatment?
A. Yes, ma’am.
Q. What were you doing?
A. I was taking some pain pills, bathing in hot water twice a day, sleeping on plywood.
Q. Were you still wearing the brace?
A. Yes, ma’am, have it on now.'
Q. Did he know at that time that you were, at the time he discharged you you were still sleeping on plywood and wearing the brace ?
A. He’s the one told me to do it.
Q. To continue doing it?
A. He told me, said that was the best treatment he knew for it, that plywood and hot water.”
Ike was examined on September 13, 1966 by Dr. Hansen who still did not pinpoint the exact cause of the back ailment, but did state that his findings were essentially the *206 same as those of his December 3, 1965 examination. Dr. Hansen noted that there persisted a right lumbar muscle spasm, felt that Ike had an orthopedic condition, and referred him to Dr. Loupe.
On September 15, 1966, Dr. Loupe examined Ike, had x-rays taken, and made a diagnosis of traumatic arthritis which was later withdrawn on the basis of more recent x-rays taken by Mr. Mal en'who attended Ike for x-ray purposes only. Dr. Loupe’s present diagnosis is that Ike suffers from a chronic lumbosacral sprain, although this diagnosis was made without the benefit of an examination subsequent to that of September 15, 1966. Dr. Loupe testified that Ike was not suffering intense pain at the time of his examination, but did state that plaintiff suffered discomfort on movement. At the trial, Dr. Loupe stated that Ike is incapable of performing heavy manual labor.
The trial judge reviewed the evidence and the testimony of Doctors Chesnutt, Sa-batier, Hansen, and Loupe and concluded:
“ * * * In view of the superior weight of the supporting medical testimony, the Court is of the opinion that Louis Ike, Sr., sustained a low back injury as a result of the accident and this injury disabled him to such an extent that he could not perform work of a similar nature to that which he had done before * * * ”
Where a question of fact is involved, the trial court should be reversed only where the appellate court feels that there was manifest error. Walker v. National Union Fire Ins. Co. of Pittsburgh, Pa., La.App., 178 So.2d 449; Bindewald v. Gurtler, Hebert & Company, La.App., 112 So.2d 746; Harness v. Toye Bros. Yellow Cab Co., La.App., 170 So.2d 737; Ferguson v. Belcher and Son, 230 La. 422, 88 So.2d 806; Boyle v. Travelers Insurance Company, La.App., 157 So.2d 471, writs refused 245 La. 574, 159 So.2d 286. Our examination of the record, including the testimony of the aforementioned doctors, leads us to the same conclusion as reached by the trial judge, that is, that from the date of the accident giving rise to this litigation up to and including the date of the trial, plaintiff was unable to perform work of a heavy nature as required of a manual laborer.
Although it is not certain to what degree his arthritic condition and hernia have contributed to his condition and pain plaintiff is obviously disabled due to chronic lumbosacral sprain. A claimant for compensation benefits is under duty only to prove disability and he does not have to show the precise medical cause thereof in order to be awarded compensation. Williams v. Travelers Insurance Company, La. App., 157 So.2d 356; Allen v. Coal Operators Cas. Co., La.App., 124 So.2d 344; Bassemier v. W. S. Young Construction Co., La.App., 110 So.2d 766, certiorari denied; Gates v. Ashy Construction Company La. App., 171 So.2d 742.
Plaintiff has appealed from that portion of the trial court’s decision denying penalties and attorney’s fees under R.S. 23 :1201.-2. Plaintiff avers that defendant wilfully, arbitrarily, and capriciously failed to timely pay medical bills and make compensation payments.
On November 19, 1965, Ike was injured, but remained on the job until November 29, 1965, at which time he was examined by Dr. Chesnutt. Jones and Farrens Inc. received a note dated December 1, 1965 from Dr. Chesnutt advising them that plaintiff could return to work in a week. There was no-demand made for compensation benefits from November 19, 1965 until suit was filed on December 14, 1965. The first compensation payment was made on December 31, 1965, and covered all compensation due from the time of the injury up to the date of the first payment.
It is clearly evident that defendant made compensation payments well within sixty days of receipt of written notice, and therefore, under R.S. 23:1201.2, was not arbitrary or capricious.
*207 Defendant continued to make compensation payments from December 31, 1965 until April 27, 1966, which was the date of Dr. Sabatier’s final examination of Ike. Dr. Sabatier notified defendant that Ike was fit and able to return to work and on the basis of this notification defendant discontinued compensation payments. Cessation of workmen’s compensation payments in reliance on the treating physician’s report is justified. Veillion v. Knapp & East La.App., 158 So.2d 336; Bertrand v. Patterson Truck Line, La.App., 138 So.2d 663; Johnson v. Barworth, Inc., La.App., 173 So.2d 349.
Plaintiff further urges that he is entitled to penalties and attorney’s fees because of defendants’ arbitrary and capricious refusal and/or failure to pay the Baton Rouge General Hospital the sum of $231.00, incurred as a result of plaintiff’s hernia operation; and, the bill of Dr. Saba-tier for $292.00. The record is completely devoid of any demand being made upon or notice given to defendants for the payment of this bill until plaintiff’s supplemental petition of September 22, 1966. This bill was paid on October 3, 1966 some eleven days thereafter. In the absence of any evidence to the contrary we must conclude that the supplemental petition was the first notice. Plaintiff was sent to the Baton Rouge General Hospital by defendants’ doctor and apparently the nonpayment of this bill was an oversight.
Plaintiff’s supplemental petition does not list or mention Dr. Sabatier’s bill which was paid by defendants on October 2, 1966. Again, the record contains no evidence of any demand being made upon defendants for the payment of this bill. This bill contained an item of $50.00 for the doctor’s deposition which obviously means that it was a bill that was supposed to have been sent by the doctor to defendants and not to plaintiff. Again, Dr. Sabatier was engaged by defendants’ doctor and not by plaintiff. However, in the absence of demand for payment we cannot hold that defendants acted arbitrarily in their failure to pay this statement for services rendered.
For the above and foregoing reasons the judgment of the district court is affirmed.
Affirmed.