*435
 
 SIMON, Justice.
 

 The Second Church of Christ, Scientist, a nonprofit religious corporation organized under the laws of Louisiana and domiciled in the city of New Orleans, instituted this suit against defendant Charles B. Spencer, individually, and against defendant Olympia Roofing Company, Inc., .a corporation organized under the laws of Louisiana and domiciled in the city of New Orleans, in solido, for damages in the sum of $5,837, the cost of repairing plaintiff’s church organ, allegedly damaged as the result of the failure of defendants to protect it against rain during the course of extensive repairs made by them on the church premises under their respective contracts. -
 

 Defendant Spencer denied liability and alleged that defendant Olympia was solely liable for having negligently failed to take ■proper precautions to prevent rain from entering the interior of the church building while said Olympia was reconstructing the roof. Defendant Spencer also filed a third party complaint praying that in the event an adverse judgment should be rendered against him that defendant Olympia be condemned to pay to him a like amount, together with interest and costs.
 

 Upon its exception of no right or cause of action being overruled, Olympia answered and denied liability. Exceptions of no right or cause of action, prescription, and an answer denying liability were filed by defendant Olympia to the third-party complaint.
 

 After trial on the merits the district court rendered judgment in favor of plaintiff and against defendant Spencer in the sum of $5,837, together with interest from judicial demand until paid, reserving to the plaintiff any claim it might have against the surety on the building contract between plaintiff and defendant Spencer. Defendant Olympia was absolved from all liability.
 

 Appeals have been perfected by plaintiff and by Spencer, the former contending that it is entitled to a judgment in solido against both defendants; the latter contending that the damages complained of were caused solely through the negligence of the employees of Olympia and that therefore the-judgment of the lower court should be reversed so as to cast Olympia alone.
 

 There is no dispute as to the nature and extent of the damage to the organ, its. cause or the cost of the repairs, the sole-issue being whether either or both defendants are responsible therefor.
 

 Hence we see that the issue involves no principle of law but one purely of fact. Under such circumstances, an analytical! disposition of the facts and the conclusion reached by the trial judge should not be disturbed in the absence of manifest error. Holmes v. Triggs, 214 La. 1083, 39 So.2d 739; Nalty v. Nalty, 222 La. 911, 64 So.2d 216; Rosenthal v. Gauthier, 224 La. 341, 69 So.2d 367; Olivier v. Abunza, 226 La. 456, 76 So.2d 528; McMahon v. Manufacturers Casualty Insurance Co., 227 La. 777,
 
 *437
 
 80 So.2d 405; Sunseri v. Westbank Motors, 228 La. 370, 82 So.2d 43.
 

 The controlling fact's disclosed by the record are as follows:
 

 On May 25, 1953, plaintiff and defendant 'Spencer entered into a general contract for the remodeling and renovation of plaintiff’s ■church edifice. In addition to the terms of the agreement, its general conditions, •drawings and specifications, the contract further stipulated that,
 

 “The contractor shall continuously maintain adequate protection of all his work from damage, and shall protect the owner’s property from injury ■ or loss arising in connection with this • contract.”
 

 •In accordance with the plans and specifi■cations for the installation of the roof, .Spencer subcontracted with Olympia, the latter agreeing to be bound to Spencer by all of the terms of the agreement between him and the owner and to assume toward .Spencer all the contractual obligations flowing in favor of the plaintiff.
 

 Pursuant to the general contract Spencer ■commenced work on the church edifice on June 9, 1953. He removed the skylight forming a part of the roof, an operation requiring about three days. As a result thereof, this area was left open and unprotected for approximately thirty hours before the joists were installed across the ■open space and wooden sheathing laid in preparation for the installation of the roof by Olympia.
 

 In preparing. the skylight area for' the roofers, Spencer left an opening approximately 10' x 10' in about the center of the roof to afford a means through which roofing materials and equipment could be raised and lowered. Two openings were also cut for use by the airconditioning contractor. The removal of the skylight and the installation of the joists and sheathing was completed, though not watertight, during the week prior to the entrance on the premises by Olympia.
 

 On August 3, Olympia delivered its roofing materials to the job. It began laying the roof on August 4 and allegedly completed a watertight roof on August 11, 1953.
 

 On August 25 the damaged condition of the organ and the organ chamber was discovered. The center section of the ceiling of the chamber was soaking wet and had fallen. The back wall of the building, which is the back wall of the organ chamber, was wet, and water dropped therefrom and from the area over the entrance to the doorway. There was considerable water on the floor. There was an accumulation of water that damaged and affected the organ proper, necessitating the extensive repairs made.
 

 Testimony of the witnesses as well as local climatological data issued by the U. S. Department of Commerce, Weather Bureau, established that during the period from August 4 to August 11 >there was no rainfall. On August 3, 1953, there was rainfall of .04" at 4 p. m., and .01" at 7 p. m.
 
 *439
 
 On August 12, 1953, there was a trace of rainfall at 10 a. m.; 1.98", or almost 2", at 1 p. m., and .04" at 2 p. m.
 

 Hence we see that the issue is whether a waterproof roof was completed immediately prior to the torrential rain on August 12, 1953.
 

 Olympia contends that the so-called felt or roofing paper had been laid, the flashing incidental to the laying of the felt was completed, and the roof made waterproof during the period from August 4 to August 11, leaving to be done only the final spread of tar and gravel thereon. Spencer contends, however, that the roofing was not complete and waterproof on that date, basing his contention on the fact that Olympia’s employees worked on the premises subsequent to that date.
 

 It is undisputed that the roof in question had a slope of about two feet, being two feet higher in the front than in the back of the building and that the roofing operation was started on the higher part of the roof and gradually descended to the lower part where there was a cricket to divert any water running down on the roof to side drain pipes.
 

 That part of the church organ which was damaged by rainwater was located in a small room at the rear of the church and under that area where the roof cricket was situated.
 

 During the renovation and remodeling of the church edifice, the organ console was removed from the premises; however, the main portion of the church organ, together with its component parts, remainded in its-regular place in the organ chamber, in the room in the back of the church. In order to protect the many delicately adjusted pipes located therein, this room was kept locked at all times, access thereto being, available only to the porter of the church and to the two men employed on a monthly basis by the church to keep the organ in repair. No protection other than the locking of doors was afforded the chamber room during the operation of the contractors, herein.
 

 The record establishes that Emile Rive and Adolph Rive, Jr., were retained by plaintiff to keep its organ in good repair. Their qualifications as expert organ builders- and repairers are unassailable. Their testimony establishes the fact that on June 17 the condition of the organ chamber was. good. The room was dry, and all of the pipes were in good condition. The organ, chamber was inspected on or about July 20,. 1953 by Adolph Rive alone who irrefutably testified that none of the damage herein, complained of existed on that date.
 

 Defendant Olympia denied having any knowledge of the organ chamber and alleged that the general contractor failed to-inform him of its presence or location. The general contractor also denied knowledge of the existence of the organ chamber. The superintendent of the general contractor admitted that he could have pro
 
 *441
 
 tected the organ loft with tarpaulin had he known of its existence. He admitted having seen the console and the echo organ but testified he did not know of the existence of the organ loft containing the pipes and other organ complements.
 

 It is inconceivable to us that a general contractor who undertakes to repair and remodel a church should represent that a mere locked door prevented him from knowing of the existence of the organ pipes in the organ room. Under the circumstances, we are constrained to hold that the general contractor was charged with knowledge of the existence of the organ, and the failure to protect it from water and any other damage during the entire period of the remodeling and renovation was negligence on the part of the general contractor.
 

 Plaintiff contends that a great deal of the damage was caused on August 12, 1953, when almost two inches of rain fell in about one hour and that the damage caused on that day was also due to the negligence of the subcontractor, Olympia.
 

 Plaintiff further contends that though the laying of the paper on the roof was complete on August 11, there yet remained to be done the final flashing to the rear wall and to the side walls with reference to the last unit of the roof. Plaintiff contends that the final unit of roofing paper had simply been tucked under an old counterflashing and afforded no protection against the heavy strain from the water on the roof over the organ chamber during the two-inch rainfall in one hour on August 12; that the water rushed back to the rear of the roof and was precipitated against the rear wall and forced over and under the paper. Plaintiff points to the fact that the water damage to the ceiling of the organ chamber was more to the rear of the organ room than to the front, the rear wall of the organ chamber being severely damaged or wetted.
 

 Defendant Spencer also contends that the water damage suffered by plaintiff was. caused by the negligence of Olympia. He contends that the final unit of the roof was. not made waterproof but was tucked under an old counterflashing which was not sufficient to keep out the rush of water caused by the two-inch downpour on August 12,, 1953. Spencer also points to the location of the water damage and contends that had the water entered the premises through the opening in the skylight, it would have fallen straight down at a safe distance from the organ room and could not have run on the inside surface of or on the ceiling of the organ room because of the several joists, which had been installed and which would have acted as baffles and from which the-water would have dripped to the floor beneath.
 

 Olympia contends that the roofing laid each day was flashed and made watertight each day and that on August 11 a watertight roof had been laid, leaving only tar and gravel to be spread thereon after August'll; that there was no rainfall during.
 
 *443
 
 the time when the roofers laid down a water-tight roof. The supervisors of the roofers testified that generally in laying a roof the felt or roofing paper is turned up against the wall and a membrane flashing is immediately applied thereto by the roofers, followed by a metal counterflashing applied by metal mechanics; that the roof is then covered with tar and gravel to create a more durable and longer-existing waterproof condition. In the instant case, at the lower end of the roof there was counter-flashing already existing on the wall. He admitted that the roofers ran the roofing up and under the said counterflashing and that the tar and gravel had yet to be spread over the roof.
 

 The supervisor was not present when the final flashing was applied to the back wall. One of the roofers testified that in roofing operations, in the event roofing laid has not been completely flashed at the end of the day, then temporary provisions are made to make the last unit laid waterproof. However, in the instant case, independent recollection as to whether the last unit of the roof laid was flashed is conspicuously absent. All parties seem to be aware of the fact that the final unit was tucked under the old counterflashing on the back wall.
 

 We are impressed with the theory that most of the damage occurred by reason of the rainfall on August 12, and that the heavy rain falling on the roof and rushing back to the rear thereof was precipitated against the rear wall and forced over and under the paper tucked under the counter-flashing. It is obvious that the volume of water rushing to the rear of the roof accumulated against the rear wall and rose high enough to go over the turned up tar paper and seep down the wall to the ceiling and the sides of the organ chamber. The paper having simply been tucked up and under the old counterflashing could certainly afford no protection against water forced over the top of the paper.
 

 In reference to the third-party complaint filed by defendant Spencer wherein he prays that in the event an adverse judgment should be rendered against him that defendant Olympia be condemned to pay to him a like amount, together with interest and costs, having concluded that under the facts presented herein the general contractor, Spencer, and the subcontractor, Olympia, being engaged in a concert of action, a common unity of purpose and design, are joint tort-feasors, both chargeable with the negligence in which this claim in damages finds its root, the third-party complaint must necessarily fall.
 

 Accordingly, for the reasons assigned, the judgment of the district court is reversed and set aside insofar as it dismisses all claims against Olympia Roofing Company, Inc.; and it is now ordered, adjudged and decreed that the said Olympia Roofing Company, Inc., be cast in judgment in solido with defendant Charles B. Spencer. ' ,
 

 
 *445
 
 It is further ordered, adjudged and decreed that the third-party complaint filed by defendant Charles B. Spencer against his co-defendant, Olympia Roofing Company, Inc., be, and the same is dismissed; in all other respects the judgment of the trial court is affirmed; all costs to be paid by defendants.