LUTHER E. HALL, Judge pro tem.
Plaintiff sued defendant for $6,461.73 balance due for scrap iron sold to defendant between September 30, 1957 and October 8, 1958. The defendant filed a general denial and reconvened for $7,932.00 itemized as follows:
Overcharge for 80 tons $1,480.00
Overcharge for 100 tons 800.00
Rental of two Truck trailers 1,152.00
Damage & Loss of Truck trailer 2,500.00
Cost of Cutting 200 tons 2,000.00
Total $ 7,932.00
Following trial on the merits judgment was rendered in plaintiff’s favor as prayed and the defendant’s reconventional demand was dismissed. Defendant prosecutes this devolutive appeal from that judgment.
This appeal involves questions of fact only.
At the outset it should be pointed out that the first two items of the recon-ventional demand are properly speaking not a demand in reconvention but a defense to plaintiff’s suit and the only defense urged thereto.
Defendant contends that plaintiff’s claim should be reduced by a total of $2,280.00 because included in the claim is a $1,480.00 overcharge resulting from plaintiff’s billing of 80 tons of scrap at $40.50 per ton when the price should have been $22.00 per ton, and another overcharge amounting to $800.-00 resulting from the billing of 100 tons of scrap at $30.00 per ton instead of $22.00 per ton which was the proper price.
Plaintiff is engaged primarily in the business of the repair and reconditioning of ships. As a result and by-product of its ship repair business plaintiff is constantly coming into possession of large quantities of scrap iron which it sells, not so much for profit, but as a means of clearing the scrap from its yards.
Defendant is engaged in the purchase and sale of scrap metal.
Under date of February 1, 1957 plaintiff and defendant entered into a written contract whereby plaintiff agreed to sell and defendant agreed to buy on an “as is, where is” basis all condemned scrap of certain specified kinds from the date of the contract through December 31, 1957. Basically the contract provided that the defendant “shall take delivery of said scrap wherever it might be and remove same within seven days after receipt of notice from the company (the plaintiff) that said scrap is available for delivery”, and obligated defendant to pay for such scrap at prices based on the monthly quotations in Iron Age magazine.
Defendant contends that the overcharges complained of resulted from the fact that the 180 tons were actually hauled off between the months of November 1957 and April 1958 when the Iron Age magazine quotations stood at $22.00 per ton whereas plaintiff has charged it for 80 tons thereof at the September 1957 Iron Age quotation of $40.50 per ton and charged for 100 tons thereof at the October 1957 quotation of $30.00 per ton.
The record reveals that these two charges resulted from the following facts:
During the month of September 1957, when the price to be paid for such scrap was $40.50 per ton, defendant removed only 50 tons of a total of some 380 tons available and which defendant had been duly notified to remove. Plaintiff accused defendant of not removing the scrap because the market was falling.
Following this accusation the parties in November 1957 verbally modified their contract of February 1, 1957. The terms of *53 this verbal modification were later reduced to writing and acknowledged by both parties. Insofar as is pertinent here this modification had the effect of granting a delay to defendant in which to remove the 380 tons which it had allowed to accumulate in violation of its contract of February 1, 1957 and defendant agreed to pay for this 380 tons as follows:
For 80 tons thereof at the September 1957 price of $40.50 per ton.
For 100 tons thereof at the October 1957 price of $30.00 per ton.
For the balance at $22.00 per ton.
.While it is true defendant did not remove the 180 tons complained of during September and October 1957 he agreed to pay therefor at the September and October market prices. We find no merit in defendant’s contention that it was overcharged.
In its reconventional demand defendant seeks $1,152.00 for rental of two trailers for sixteen days each. The sole support for such rental is the uncorroborated testimony of defendant’s president. Plaintiff’s purchasing agent admitted that the trailers were used by plaintiff for a maximum of one week but testified that defendant had agreed that such use would be gratuitous. Since there is nothing in the record to corroborate the testimony of either witness the sole issue here is a question of veracity.
Defendant also reconvened for $2,-500.00 alleged damage done to one of the trailers by being lifted and then dropped by one of plaintiff’s cranes. There is no adequate proof that the accident occurred or that in truth and in fact the trailer was damaged.
The final item of the reconventional demand is for the cost of cutting 200 tons of scrap iron which defendant contends it had cut up but had not removed when its relations with plaintiff terminated. This also presents a question of the veracity of the witnesses. Mr. Lomm, defendant’s president, and his son-in-law, Mr. Pailet, testified that 200 tons of cut scrap was not hauled. Plaintiff’s representative, Mr. North, testified that if any cut scrap at all was left on the premises “it would have been a very small amount”.
The issue in this case is the veracity of the witnesses. It is well settled that the trier of fact, having observed the demeanor of the witnesses, is the best judge of their veracity and that an appellate court will not disturb the findings of fact by the trial judge in the absence of manifest error. See Barlotta v. Walker, 223 La. 157, 65 So.2d 122; Second Church of Christ, Scientist v. Spencer, 230 La. 432, 88 So.2d 810.
We find no error in the judgment appealed from and the same is affirmed.
Affirmed.