The **CALIFORNIA COMPANY** and Frank Stipelcovich, etc., Appellants,

v.

**J. E. JUMONVILLE**, Appellee.

No. 20342.

United States Court of Appeals Fifth Circuit.

Jan. 31, 1964.

Rehearings Denied March 19, 1964.

George V. Baus, Adams & Reese, Edward S. Bagley, Benjamin W. Yancey, Andrew T. Martinez, New Orleans, La., Terriberry, Rault, Carroll, Yancey & Farrell, New Orleans, La., of counsel, Sam A. LeBlanc, III, for appellants.

George B. Matthews, Lemle & Kelleher, New Orleans, La., for appellee.

Before HUTCHESON and BELL, Circuit Judges, and BREWSTER, District Judge.

GRIFFIN B. BELL, Circuit Judge.

The District Court, in an interlocutory decree, held appellants negligent, and liable for damages sustained by appellee when his dredge stranded on a sunken breakwater barge owned by The California Company, and located adjacent to its drilling rig, while the dredge was in the tow of the tug CHERIE owned by Stipelcovich.

The findings of fact and conclusions of law with regard to negligence and proximate cause, as well as those relating to the denial of limitation of liability to Stipelcovich are amply supported by the facts of record and the applicable legal authorities, and furnish no basis for error. McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20; Ohio Barge Line, Inc. v. Oil Transport Company, 5 Cir., 1960, 280 F.2d 448.

The California Company by way of a special defense pleaded the terms of a hold harmless clause given it, at its request, by Jumonville to cover any services thereafter rendered by Jumonville. This defense forms the basis for the sole remaining issue on this appeal. The California Company was engaged in offshore drilling in Louisiana, and required all who wished to do business with it to agree, as a condition precedent and in advance of and whether or not contained in particular service or supply contracts, to a contractual indemnification couched in the following language:

> "*Contractor* agrees to hold *company* indemnified and harmless from and against any loss, expense, claim or demand for: (A) Injury to or death of *contractor's* employees or for damage to or loss of *contractor's* property in any way arising out of or connected with the performance by the *contractor* of services hereunder; * * *."

The District Court concluded, with respect to the negligence of The California Company, as follows:

> "The California Company was at fault in failing to mark or light the sunken breakwater barge as was required by common prudence and by the terms of the permit granted it by the U. S. Engineers, and in failing to advise the Tug CHERIE that the barge was sunk at the rig site so that she could navigate with reference to its presence. Since The California Company undertook to arrange for the towage of the dredge from Venice to the rig site, it owed libellant a duty to procure a seaworthy tug with sufficient motive power, equipment and crew to undertake and safely carry out the towage. This it failed to do."

This conclusion is well founded in light of the fact that the hiring of the dredge to The California Company was on the express understanding that the towage would be by The California Company and by a tug with sufficient power to take care of the dredge while it was being towed outside the Southwest Pass of the Mississippi River and in the Gulf of Mexico en route to the drilling rig. Instead, The California Company, in its haste to obtain the use of the dredge at the rig site hired a tug with inadequate power, and directed its use with a crew of one when its license called for a crew of three, and in the face of a request by the tug captain that he be given time to get a deckhand. The haste was occasioned by the fact that the rig was scouring and the dredge was needed at the earliest possible time to do necessary filling. Both the insufficient power and shortage of crew were contributing factors to the damage which occurred when one line of the towing bridle broke as the flotilla approached the rig, and the dredge then drifted with the wind and tide towards the rig, out of control, stranding on a barge which had been sunk in front of the rig, on the seaward side, by The California Company to act as a breakwater. In addition, the negligence of The California Company in failing to mark the sunken barge, and in failing to warn the tug captain of it at the time of hiring or upon the approach to the rig, contributed to the casualty.

■■ These facts, demonstrating the agreement of The California Company to tow the dredge, and its negligence in carrying out this undertaking, bring the case within the rule of Bisso v. Inland Waterways Co., 1955, 349 U.S. 85, 75 S. Ct. 629, 99 L.Ed. 911, and the companion case of Boston Metals Company v. S/S "Winding Gulf", 1955, 349 U.S. 122, 75 S.Ct. 649, 99 L.Ed. 933, as reiterated in Dixilyn Drilling Corporation v. Crescent Towing and Salvage Company, 1963, 372 U.S. 697, 83 S.Ct. 967, 10 L.Ed.2d 78. The rationale of these cases is that agreements of the type here involved relieving one from the consequences of his own negligence are unenforceable in contracts of towage where designed to release the tower. The rule is grounded on public policy with the end in mind of discouraging negligence by making wrongdoers pay damages, and of protecting those in need of services from being overreached by others having power to drive hard bargains. Here, by analogy, the facts show that The California Company, having engaged to tow the dredge, was so inextricably related to and connected with the towing as to be held as a tower. It follows that the contractual indemnity on which it relies is unenforceable under the peculiar circumstances here and in the claimed situation.

For this reason, we pretermit the questions of whether there was a clear intent under the language used to relieve The California Company for its negligent damaging of the property of Jumonville, or whether the damages arose out of or were connected with the performance of services by Jumonville for The California Company. See Batson-Cook Company v. Industrial Steel Erectors, 5 Cir., 1958, 257 F.2d 410; Jacksonville Terminal Company v. Railway Express Agency, Inc., 5 Cir., 1961, 296 F.2d 256; and American Agricultural Chemical Company v. Tampa Armature Works, Inc., 5 Cir., 1963, 315 F.2d 856.

The question of interest was not in issue. The interlocutory decree of the District Court will be modified to provide that appellants may contest the award of interest in the District Court once damages have been assessed, and prior to final judgment.

Modified, and as modified, affirmed.