GENERAL ELECTRIC COMPANY and
Electric Mutual Liability Insurance
Company, Appellants,

v.

CUBAN AMERICAN NICKEL COM-
PANY et al., Appellees.

No. 23008.

United States Court of Appeals
Fifth Circuit.

Feb. 7, 1968.

Rehearing Denied July 1, 1968.

Harrison G. Ball, Lynn, Mass., William A. Porteous, III, William A. Porteous, Jr., New Orleans, La., for appellants.

John V. Baus, Charles W. Lane, III, Carl J. Schumacher, Jr., New Orleans, La., for appellees.

Before WISDOM and GODBOLD, Circuit Judges, and McRAE, District Judge.

WISDOM, Circuit Judge:

"Perhaps the most evenly-balanced controversy in all of compensation law is the question whether a third party in an action by the employee can get contribution or indemnity from the employer, when the employer's negligence has caused or contributed to the injury." 2 Larson, Workmen's Compensation Law § 76.10, at 228 (1952). Under Erie we are called upon to resolve this controversy in accordance with the as yet undeveloped Louisiana law on the subject.

■ Indemnity may arise either in contract or in tort: by an express or implied contract to indemnify; or by equitable concepts based on the tort theory of indemnity, for example, when one party has been only "technically" or constructively at fault and the indemnitee has been actively at fault. Whether Cuban American, the defendant-appellee, is entitled to indemnity from G.E. under any of these theories is the focal point of our inquiry.

Salvadore Locicero sued the Cuban American Nickel Company (formerly Freeport Nickel Company), and its insurer, Liberty Mutual Insurance Company, for personal injuries arising out of an industrial accident at the Company's metal recovery plant in Port Nickel, Plaquemines Parish, Louisiana. Locicero, at the time of the accident, was working for General Electric Company as an electrician and a member of a repair crew. July 29, 1959, G.E. dispatched Locicero to a switching station (substation) at the Port Nickel plant to repair certain equipment G.E. had warranted. Cuban American was in possession and control of the plant and, of course, the switching station, and had an electrical engineer and several electricians in its employ.

On the day in question the repair party was admitted to the premises at Port Nickel and escorted to the switching station by Aubrey Covington, the Cuban American employee charged with the responsibility for the station. Covington unlocked a gate to the fence surrounding the station and unlocked the door to the building containing the electrical equipment to be repaired. The repair party was supplied with a diagram of the wiring of the station and, after receiving assurances from Covington that it was safe to work on the equipment, proceeded to repair the broken equipment. The G.E. engineer in charge of the party, relying upon the assurances of Covington, made no independent examination of the diagram and conducted no independent tests to determine whether the station was deenergized. While working in the lower compartment of the switching station Locicero came in contact with an electrical conduit carrying over 13,000 volts. As a result of this contact he received extensive burns causing severe disfigurement.

Locicero brought a negligence action against Cuban American and its liability insurer for the personal injuries he sustained. Electric Mutual Liability Insurance Company, the compensation insurer of G.E., intervened to recover compensation benefits paid to Locicero and the medical expenses paid over and above the statutory limits.[1]

Cuban American brought a third-party indemnity demand against C. F. Braun and Company, which had purchased the equipment from G.E. and had built the switching station for Cuban American, and against G.E. and its liability insurer. After trial was commenced Cuban American settled with Locicero for $150,000 and continued its indemnity suit as third-party plaintiff against G.E.[2] The trial

---

1. Electric Mutual secured a right to these expenses by a subrogation agreement with Locicero; at the time of trial the intervenor was entitled to $38,164.44.

2. G.E. objected to the compromise settlement, which the trial court later found to have been reasonable under the circumstances, and to the trial court's con-

judge charged the jury both on tort indemnity and on implied contractual indemnity. On special interrogatories, the jury found that both G.E. and Cuban American were negligent, that Locicero was not negligent, and that Cuban American's negligence was "passive", while G.E.'s was "active". Accordingly, the jury found that Cuban American was entitled to indemnity against G.E. The court entered judgment for Cuban American in the amount of $150,000 on the indemnity claim and denied Electric Mutual's compensation recovery, although acknowledging the validity of its subrogation rights. G.E. and Electric Mutual moved for a judgment n. o. v. or alternatively for a new trial principally on the ground that the third-party plaintiffs could not recover under any legally acceptable theory of indemnity. The district court denied these motions, giving written reasons. Locicero v. Freeport Nickel Company, E.D.La.1965, 243 F. Supp. 828. G.E. and Electric Mutual appeal. We reverse.

## I.

It is undisputed that there was no express indemnity agreement between G.E. and Cuban American. Thus any contractual indemnity must be *implied*. Cuban American's claim is predicated on the theory that G.E. owed Cuban American an implied contractual duty to perform the warranty repair work with due care in a competent, safe, and workmanlike manner; that G.E.'s breach of this contractual duty caused Locicero's injury and the resulting loss to Cuban American; and that, as a matter of law, because of this breach of a contractual obligation G.E. is obligated to indemnify Cuban American for the amount which Cuban American was required to pay Locicero.

> When the employer's relation to the third party is that of a contractor doing work for the third party, there may be an implied obligation to perform the work with due care. If, by

failing to use such due care, the employer causes an incident injuring his own employee, it may be said that the employer has simultaneously breached two duties of care. The one is toward the employee, and it is for this breach that the compensation bars any common law remedy. The other is toward the third party contractee, and among the damages flowing from the breach of this separate duty are any damages the third party may be forced to pay the employee because of their relation. Larson § 76.43, at 236–37.

In the instant case the jury found that G.E. had breached its implied obligation to perform the repair work with due care, giving rise to the obligation to indemnify Cuban American.

A. The concept of an implied obligation to indemnify is traceable to Westchester Lighting Co. v. Westchester County Small Estates Corp., 1938, 278 N.Y. 175, 15 N.E.2d 567. In that case the court refused to hold the exclusive-remedy clause of the Workmen's Compensation Act a bar to a third-party indemnity suit against the employer. The court observed: "Plaintiff does not sue for damages 'on account of' Haviland's death. Plaintiff asserts its own right of recovery for breach of an alleged independent duty or obligation owed to it by the defendant." 15 N.E.2d at 568. Not until Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 1955, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, was this concept fully developed into an independent theory of indemnification.

Ryan Stevedoring Company, under contract with Pan-Atlantic, had improperly stowed goods aboard a vessel, and Pan-Atlantic had carelessly failed to discover the defect. One of Ryan's employees was injured as a result. He accepted compensation under the Longshoremen's and Harbor Workers' Compensation Act and then sued the shipowner, who impleaded Ryan. The Supreme Court, in a five-to-four decision, held that the exclusive-

tinuing to entertain the third-party demand after dismissal of the *original*

plaintiff. These objections were overruled.

remedy clause of the Act did not bar the shipowner's indemnity claim and that Pan-Atlantic was therefore entitled to indemnification for Ryan's breach of an implied promise to do the stevedoring work in a proper manner.

The shipowner's action here is not founded upon a tort or upon any duty which the stevedoring contractor owes to its employee. The third-party complaint is grounded upon the contractor's breach of its purely consensual obligation *owing to the shipowner* to stow the cargo in a reasonably safe manner. * * *

The shipowner here holds petitioner's uncontroverted agreement to perform all of the shipowner's stevedoring operations at the time and place where the cargo in question was loaded. That agreement necessarily includes petitioner's obligation not only to stow the pulp rolls, but to stow them properly and safely. Competency and safety of stowage are inescapable elements of the service undertaken. This obligation * * * is of the essence of the petitioner's stevedoring contract. 350 U.S. at 131–133, 76 S.Ct. at 236, 100 L.Ed. at 141–142.

*Ryan* and its progeny,[3] and their impact in admiralty law, have been extensively and ably discussed in law review commentary.[4] The complexities and nuances involved in application of the *Ryan* doctrine in admiralty do not now concern us: The instant case turns on Louisiana law, not on federal admiralty law. We consider the *Ryan* doctrine inapplicable to the present case. We therefore need not discourse on what the doctrine covers when, for independent reasons, we have concluded that the doctrine does *not* cover this case.

B. In many jurisdictions it is generally accepted that "the right to indemnity is not confined to the admiralty field or to the issue of seaworthiness of a vessel." Bielawski v. American Export Lines, E.D.Va.1963, 220 F.Supp. 265, 269. Perhaps the leading case expanding the *Ryan* doctrine's application to nonmaritime situations is General Electric Company v. Moretz, 4 Cir. 1959, 270 F.2d 780, cert. denied, Mason & Dixon Lines, Inc. v. General Electric Co., 361 U.S. 964, 80 S.Ct. 593, 4 L.Ed.2d 545.[5] Moretz, an employee of Mason & Dixon Lines (M. & D.), brought suit against G.E. for injuries sustained while driving a trailer truck which G.E. had negligently loaded. Heavy electrical equipment had been placed in the center of the trailer without bracing. During the trip the load shifted as the vehicle rounded a turn, causing the trailer to overturn and injure the driver. G.E. filed a third-party complaint seeking indemnity from M. & D. alleging that the common carrier had breached its contractual obligation to inspect the shipment and to see that it was safely stowed. Although there was no express indemnity agreement, the court concluded that "the contract of Mason & Dixon for the car-

---

3. See the cases discussed in Note, The Ryan Doctrine: Present Stature and Future Development, 37 Tulane L.Rev. 786 (1963), and Kilius & Cecil, Indemnity Suits by Vessel Owner Against Stevedoring Contractor: A Search for the Limits of the Ryan Doctrine, 27 Ins.Couns.J. 282 (1960).

4. See. e. g., Bue, Admiralty Law in the Fifth Circuit—A Compendium for Practitioners: I, 4 Hous.L.Rev. 347, 410 (1966); Carrere, Recent Developments in Personal Injury Law in the Tidelands, 32 Tulane L.Rev. 275, 287 (1958); Stover, Longshoreman-Shipowner-Stevedore: The Circle of Liability, 61 Mich.L.Rev. 539 (1963); White, A New Look at the Shipowner's Right-Over for Shipboard Injuries, 12 Stan.L.Rev. 717 (1960); Comment, the Ryan Doctrine: Present Stature and Future Development, 37 Tulane L.Rev. 786 (1963); The Supreme Court, 1955 Term, 70 Harv.L.Rev. 83, 149 (1956); Comment, Overlapping Remedies for Injured Harborworkers: Interaction on the Waterfront, 67 Yale L.J. 1205 (1958); Note, 24 La.L.Rev. 878 (1964); Note, 66 Yale L.J. 581 (1957); Note, 44 Calif.L.Rev. 800 (1956).

5. The *Moretz* case has been criticized as a "departure from the traditional legal pattern", "dubious", "complicated", and "difficult to apply to given situations". Dykes, Contractual Indemnity, 27 Ins. Couns.J. 327, 328 (1960).

riage of the goods embraced the liability to indemnify General Electric in case it suffered loss occasioned by the neglect of the carrier", and allowed full indemnity to G.E. against M. & D. After discussing and quoting at length from *Ryan* and other admiralty cases, the court observed that "it is plain that the default of the shipper in the pending case was no greater than that of the shipowner in the cited cases." 270 F.2d at 789.

In Pearson to Use of Phoenix Indem. Co. v. National Trust for Historic Preservation, D.D.C.1956, 145 F.Supp. 378, the plaintiff sued National Trust for damages for injuries sustained because of the defendant's negligent maintenance of water tank on property the defendant operated and controlled. National Trust brought a third-party complaint against the plaintiff's employer asserting that the negligence of the employer's other servants caused the injuries. Citing only *Ryan*, the court saw "no distinction in [this employer's] undertaking and that of the stevedoring company in the Ryan case" and thus refused to dismiss the third-party complaint. In accord is Atella v. General Electric Co., D.R.I.1957, 21 F.R.D. 372.[6] These cases, however, represent not only a select view of the case law on the subject, but also distinctly not the Louisiana view. Under *Erie,* of course, Louisiana law controls.

C. Louisiana courts have not yet directly passed upon the applicability of the *Ryan* doctrine. Kiefer, The Right of a Third Party to Contribution or Indemnity from a Louisiana Workmen's Compensation Employer, 38 Tulane L.Rev. 536, 543 (1964). Our examination of Louisiana law, however, leads us to conclude that Louisiana courts would in similar cases refuse to imply contractual indemnity.

The foundation for this view can be found in various Louisiana cases involving allegations of *express* contracts of indemnity. For example, in McClintic-

Marshall Co. v. O'Leary, 1920, 147 La. 85, 84 So. 503, the Louisiana Supreme Court refused to construe an exchange of letters pertaining to insurance coverage as constituting an indemnity agreement. The court noted: "there can be no relief in an action of indemnity, where the party sought to be held has in no wise obligated himself to make good the outlay. There was no meeting of the minds to constitute a contract of indemnity, as required by law. C.C. arts. 1797, 1798." 147 La. at 92, 84 So. at 505. Later, in Buford v. Sewerage and Water Board of New Orleans, La.App.1937, 175 So. 110, the court, finding no express indemnity provision in the contract of warranty, concluded that "it cannot be presumed that such was the intention of the parties, in the absence of a clear and specific stipulation to that effect." The court continued, quoting from *Corpus Juris,* that "it is but reasonable to require that an obligation so extraordinary and harsh should be expressed in clear and unequivocal terms." 175 So. at 112–113.

In Brady v. American Ins. Co., La.App. 1967, 198 So.2d 907, one of the issues presented concerned the effect to be given certain statements in a truck rental contract. The would-be indemnitee contended that statements concerning insurance of the vehicle were in the nature of an indemnity agreement. The court, rejecting this contention and quoting from the trial judge's "Reasons for Judgment", observed:

> By no stretching of its language does it appear to become a guarantee to indemnify any party in the event of loss, even more so against loss due to 'indemnitee's' own negligence. Unless there be no room for doubt as to the intent of the parties, unless the language be express and unequivocal as to indemnify, the Courts have considered parties to not have entered into such an agreement.

---

6. See also the cases cited in Halliburton Co. v. Norton Drilling Co., 5 Cir. 1962, 302 F.2d 431, 439 (dissenting opinion).

The court emphasized this position in Mills v. Fidelity & Casualty Co. of New York, W.D.La.1964, 226 F.Supp. 786, 790:

> [U]nder Louisiana law an intention to indemnify the indemnitee against his own negligence will not be presumed in the absence of a clear and specific stipulation to that effect. * * * No Louisiana case has been cited, and none found in our independent research, containing a definitive statement of policy toward agreements purporting to indemnify the indemnitee against losses resulting from his own negligent acts. However, Buford, supra, makes it clear that such agreements are disfavored to the extent that they will not be enforced unless the terms of the agreement clearly require such interpretation.

Finally, in Grigsby v. Coastal Marine Service of Texas, Inc., W.D.La.1964, 235 F.Supp. 97, 110, the court stated without hesitation: "We hold it to be uncontroversial that unless the intention is unequivocally expressed, the law will consider that the parties did not undertake to indemnify one against his own negligence. * * * This is certainly the law of Louisiana. Dubuque Fire & Marine Ins. Co. v. Union Compress and Warehouse Company, D.C., 146 F.Supp. 482 * * *."

It is true that in none of these cases did the courts consider the effect of implied obligations to use due care and indemnify, nor was that theory presented; they do, however, stress the strictness with which Louisiana courts view any indemnity claim. Indeed, Professor Larson concluded that Louisiana courts had rejected any indemnity theory permitting a recovery on an implied obligation. 2 Larson, Workmen's Compensation Law § 76.43, at 240, n. 19 (Supp. 1963).

D. The author of an extensive study of this subject concluded, "it is unfortunate that the Louisiana courts have not had an occasion to decide whether a third party should be entitled to recover indemnity from a workmen's compensation employer on an implied obligation theory". He points out, however:

> Apparently, for a Louisiana court to allow a recovery over on an implied indemnity agreement, the third party must prove (1) that he is a party to an existing contract with the employer, (2) that the employer has expressly promised to perform a service or a task for the third party, and (3) that the nature of the work to be performed necessarily requires that it be done in a workmanlike manner using due care. The nature of the service rendered is of primary importance because the undertaking must reflect that the employer has impliedly warranted his service. Article 2769 of the Louisiana Civil Code contemplates that a contractor's liability for improper performance of a contract for services on the job will be predicated on failure to execute the contract "* * * in the manner * * * he has agreed to do it. * * *." There are no provisions governing the manner in which such contracts are to be performed. Hence, in the absence of express declarations in the contract, a Louisiana court would be justified in finding an incidental obligation to employ a particular standard of care only if "* * * the parties may reasonably be supposed to have been silent upon [it] from a knowledge that * * *" it would be supplied by the usages of the trade in like situations. A breach of this implied obligation would give rise to damages, including a right to recover-over indemnity for claims for personal injuries by the contractor's employees. * * * When a Louisiana court is faced with this problem, indemnity should be allowed or rejected according to the provisions of the contract and the nature of the work to be performed * * *. Kiefer, supra at 545.

As to "the provisions in the contract", here the only contract was the purchase agreement between G.E. and C. F. Braun & Company with an undertaking to supply and install spare parts. The warranty insured to Braun and its customer.

Cuban American. Nowhere in the agreement are the words: "indemnify", "save", "defend", "protect" or "hold harmless" found. This is the language of express indemnity contracts. Nothing in the purchase agreement in the slightest resembles the agreement found in Travelers Insurance Company v. Busy Electric Co., 5 Cir. 1961, 294 F.2d 139, or California Co. v. Jumonville, 5 Cir. 1964, 327 F.2d 988. Contract in Louisiana is a consensual obligation. Civil Code Articles 1766, 1797–1818.

▆ Paragraph four of the contract provides that if "Braun or its customer" discovers "defects, errors, or omissions in, or breach of any warranty as to the material or items supplied by Seller,. the Seller shall repair or replace without cost to Braun or its customer, to the extent necessary, the material or item in question." Under the "General Terms and Conditions" part of the agreement, the final paragraph provides that "This order and its attachments and references contain the entire agreement between Braun and Seller." Thus, while it is not argued that the contract itself provides the indemnity obligation, we find nothing in the contract from which any such obligation can directly be implied.

Similarly, we do not view "the nature of the work to be performed" as giving rise to an implied obligation to indemnify. As this Court has observed, the stevedore-shipowner cases "represent somewhat of a departure from the general rule that a contract will not be construed to provide for indemnification of the indemnitee for losses due to his own neglect, unless the intention to do so is expressed in unequivocal terms." Halliburton Co. v. Norton Drilling Co., 5 Cir. 1962, 302 F.2d 431, 436. In *Halliburton* an employee of Norton Drilling Company, was injured through the negligence of Halliburton, an oil well servicing concern. The employee sued Halliburton, who in turn, relying on Ryan, brought a third-

party complaint against Norton based on Norton's negligence. We affirmed dismissal of the thirty-party complaint. Judge Tuttle, for the Court, reviewed in detail the reasons for the *Ryan* doctrine, quoting extensively from Judge Mathes's opinion in Hugev v. Dampskisaktieselskabet Internat'l, S.D.Cal.1959, 170 F.Supp. 601. Those reasons are grounded upon the hazards of maritime service, the strict liability of the shipowner, and the fact "that the stevedoring contractor cannot reasonably expect, and does not expect, to board a vessel which in all respects * * * is in a seaworthy condition, or even in a reasonably safe condition. Hence, it is not reasonable to infer that the shipowner, in executing the stevedoring contract, impliedly covenants that the condition of the ship or of her equipment or appliances will exceed the stevedoring contractor's reasonable expectations." 170 F.Supp. at 610. We continued:

It is apparent that none of the considerations discussed by Judge Mathes are present in the instant case. Certainly, a drilling contractor has no reason to expect that equipment furnished by a supplier to the well may be so defective as to be dangerous to life and limb. Consequently, it is highly unreasonable to assume that a drilling contractor, merely by agreeing to perform its services in a careful and workmanlike manner, intends to immunize the supplier of defective equipment from liability for any losses attributable in whole or in part to such defect. Thus, even if Norton did promise Halliburton, either directly or indirectly, that it would remove the cementing head with reasonable care, we would have difficulty construing this as a promise to indemnify Halliburton for losses traceable directly to a defect in the cementing head, for which defect Halliburton alone would be responsible.[7]

---

7. In *Halliburton* we also discussed another issue relevant to extension of the *Ryan* doctrine in the present case. In *Halliburton* "there was no contract be-

tween Norton and Halliburton". Here G.E. was doing repair work for Cuban American because Cuban American was a "customer" of Braun & Co. and was

In Ocean Drilling & Exploration Co. v. Berry Bros. Oilfield Service Inc., 5 Cir. 1967, 377 F.2d 511, noted in 42 Tulane L.Rev. 382 (1968), this Court, in an admiralty appeal, considered the advisability of giving the *Ryan* doctrine nonmaritime application. The facts in that case parallel those before us, but the employees there were injured on a fixed offshore platform. They brought suit charging ODECO, the owner of the platform, with negligence in failing to furnish a safe place to work. ODECO filed a third-party complaint against Berry Bros., alleging that the injuries resulted from the failure of Berry to perform its repair contract in a reasonable and workmanlike manner. After reviewing the *Ryan* doctrine and the reasons underlying this doctrine, Judge Thornberry concluded:

> This controversy therefore appears to involve none of the factors calling for the application of those special rules governing the obligations and liability of shipowners to seamen. The claims against ODECO are based purely and simply on tort principles * * * and cannot be properly viewed as involving any breach by Berry Bros. of an implied warranty of workmanlike service.

E. Cuban American cites Hebert v. Blankenship, La.App.1966, 187 So.2d 798, as authority that Louisiana now accepts the *Ryan* doctrine as applying to nonmaritime contracts. In *Hebert* the decedent, an employee of British-American

Oil Producing Company, was fatally injured when a drilling rig toppled over. The plaintiff sued individual defendants as officers and stockholders of A. & B. Company, which had entered into a contract with British-American to furnish all labor and material to rework the well, alleging that the defendants were negligent in permitting the rig to be put in operation without proper foundation or equipment. The defendants filed a third-party action against British-American, contending that, among other things, British-American had breached a contractual obligation to provide a proper foundation and location for the drilling rig; thus the defendants should recover over on an implied contractual indemnity theory.

The court found that British-American owed no duty to the defendants, as individuals, and that there was no contract between British-American and the individual defendants from which indemnity could be implied. After summarizing the basis for the implied indemnity theory, the court said:

> The Louisiana state courts have not yet passed upon recovery over upon any such implied indemnity agreement as included within the last characterization * * * which is the basis of the recovery sought by appellants herein. However, a federal court applying Louisiana law found that contract-indemnity may be recognized upon a determination that there has been a breach of an express or implied war-

---

covered thusly under the warranty. Crumady v. The Joachim Hendrik Fisser, 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed. 2d 413, involved recovery by the shipowner from the stevedoring company even though the company had contracted with a charterer of the vessel rather than with the shipowner itself. The Supreme Court held that "The warranty [of workmanlike service] which a stevedore owes when he goes aboard a vessel to perform services is plainly for the benefit of the vessel whether the vessel's owners are parties to the contract or not. That is enough to bring the vessel into the zone of modern law that recognizes rights in third-party benefici-

aries." 358 U.S. at 428, 79 S.Ct. at 448, 3 L.Ed.2d at 417. We then went on to reject expansion of the third-party beneficiary concept in the Halliburton case. While we do not hold that there is in the present case any agreement that G.E. will perform the work in a careful and workmanlike manner, were we to find one we would decline to extend it beyond the *immediate contracting parties*, as has been done under admiralty law. While we recognized that federal maritime law was controlling in *Halliburton*, we went on to say that "the same result we have reached would follow if the law of Louisiana were applied." 302 F.2d at 437.

ranty *to the third person* which proximately caused the injuries for which the third party seeks to be indemnified by the employer. Locicero v. Freeport Nickel Co., E.D.La.1965, 243 F.Supp. 828 (1965).

*Hebert* contained no further discussion of the implied indemnity theory and did not intimate approval or disapproval of that theory, and it is apparent that what little discussion there was was pure dictum. In *Locicero*—the instant case in the court below—the district court cited only *Ryan* and one Louisiana case not in point,[8] and then distinguished away three cases.

## II.

■ The decision of the court below is grounded upon tort indemnity, as well as contract indemnity.

A. In Louisiana the tort indemnity theory was first fully developed in Appalachian Corp. v. Brooklyn Cooperage Co., 1922, 151 La. 41, 91 So. 539, where an injured watchman sued the owner of the premises for negligent failure to provide a safe place to work. The owner then turned to the party in possession of the premises for indemnity, alleging that the possessor had created the dangerous condition. The court held:

> It is undoubtedly the general rule of law and jurisprudence that where two or more parties, acting in concert, or are legally held to have acted in concert, commit a wrongful act from which damages result to a third party, the party who is compelled to respond and to pay for the injury can have no action for indemnity against the other party or parties to the wrongful act. The rule has its foundation in public policy, that no one can allege his own turpitude or claim an advantage for his own wrong. The courts in such a case will leave the parties in the position in which they have placed themselves, and will not undertake to adjust equities between them, nor to inquire into the comparative or relative culpability as between them. Every rule, however, has its exception, and where, as in this case, the actual fault of the proximate cause of the injury is attributable to one of the parties and the other is only technically or constructively at fault, from failure or omission to perform some legal duty, the general rule will not apply, and indemnity may be held against the one primarily responsible for the act which caused the damage.[9]

Cuban American is not in the same category as Appalachian. Cuban American was in possession of the premises. It had a crew of electricians on duty. Cuban American's personnel admitted having told the General Electric personnel of the status of certain of the switchgear. Cuban American is more like the defendant in *Appalachian* than like the Appalachian Corp. which was not in possession of the property and had no knowledge of the defective condition. Cuban American was in possession of the property and had given certain assurances to the General Electric party.

■ In the instant case the district court concluded that "by finding Freeport [Cuban American] 'passively' negligent it must be presumed that the jury determined those factual issues in favor of Freeport", that is, that "Freeport was at least technically at fault for failing to provide a safe place to work, amounting to 'passive' negligence." 243 F.Supp. at 829. The court erred in its statement of Louisiana law. Kiefer accurately states the law in the following passage, 38 Tulane L.Rev. at 547–48:

> Although the conventional theory of active and passive negligence, which distinguishes between degrees of culpable activity, has gained acceptance in

8. American Employers Ins. Co. v. Gulf States Util. Co., La.App.1941, 4 So.2d 628.

9. Accord, Travelers Ins. Co. v. Busy Elec. Co., 5 Cir., 1961, 294 F.2d 139, 144; Northwestern Mutual Fire Ass'n v. Allain, 1954, 226 La. 788, 77 So.2d 395, 399, 49 A.L.R.2d 362; Marquette Cas. Co. v. Brown, 1958, 235 La. 245, 203 So. 2d 269, 273.

many American states, in Louisiana it has been restricted to cases where the constructively liable party could not "in law or morals be said to be a culpable participant in the act of negligence." [10] Thus in Louisiana the distinction is between, not active and passive negligence, but actual and constructive fault. Non-contractual tort indemnity has been allowed only in the complete absence of actual negligence, that is, where one party is clearly only technically at fault or vicariously liable, e. g., the tort liability of an owner of a building for failure to keep his premises in repair where the building, which he had recently purchased, was still in the possession and control of the third party-vendor; [11] the liability of a parent for the tort of his child where a third party caused a dangerous weapon to be placed under the child's control [12] and the vicarious liability of an employer for the tort of his employees. [13] Kiefer continues, supra at 548–49:

> If the Louisiana courts continue to restrict the application of the conventional active-passive negligence theory to situations where the party seeking recovery in indemnity is *only vicariously at fault*, it seems improbable that circumstances would arise to justify an application of the theory to a suit by a third party against a workmen's compensation employer. [14] (Emphasis added)

We find it unnecessary to remand this case for a jury determination of whether or not Cuban American's negligence was technical for two reasons. First, the jury found, apart from its finding of passiveness, that Cuban American was negligent. [15] This finding, considered in

10. [Notes 10–13 are author's notes renumbered.] Appalachian Corp. v. Brooklyn Cooperage Co., 151 La. 41, 91 So. 539, 541 (1922); see United Gas Corp. v. Guillory, 206 F.2d 49 (5th Cir. 1953).

11. Appalachian Corp. v. Brooklyn Cooperage Co., supra note [10].

12. Sutton v. Champagne, 141 La. 469, 75 So. 209 (1917).

13. Williams v. Marionneaux, 240 La. 713, 124 So.2d 919 (1960); see American Employers' Ins. Co. v. Gulf States Util. Co., 4 So.2d 628 (La.App.1941).

14. The active-passive distinction was criticized in Davis, Indemnity Between Negligent Tortfeasors: A Proposed Rationale, 37 Iowa L.Rev. 517, 542–43 (1952). See also Note, Contribution and Indemnity: The Effect of Workmen's Compensation Acts, 42 Va.L.Rev. 959, 961 (1956): "Often the courts permit a tortfeasor who is only 'passively' or 'secondarily' negligent to be indemnified by the one 'actively' or 'primarily' negligent. These words indicate that the decision was based on relative fault, but they do not have precise meanings and merely tend to be ways of stating a conclusion."

15. The lack of clarity surrounding the issue of passive negligence, and reinforcement of the notion that the finding of passive negligence was not tantamount to a finding of technical negligence, is forcefully illustrated by the following dialogue that took place before jury deliberation in the trial below.

> JUROR NUMBER ONE: Could I ask one question? Would you clarify a little further this active and passive, just how that is applied? I mean how it is applied here, active and passive negligence. I mean the difference.

> THE COURT: The Court hesitates to give you an illustration of that which is passive and that which is active for fear that you might construe it to be the only evidence of such a situation. * * *

> JUROR NUMBER ONE: Does it mean direct and indirect?

> THE COURT: That could be one phase.

> JUROR NUMBER ONE: Similar to that?

> THE COURT: A person, actually this can pretty well be predicated on the proposition that if one just assumed an indifferent or laissezfaire attitude, or something, that could be an active negligence; but indifference, on the other hand, may be construed so as to make a case of passive negligence as opposed to active negligence.

The court then quoted extensively from the *Appalachian* case to exemplify "passive" negligence. It concluded: "I don't know whether that is sufficient or not, but it is the language of the Supreme Court of this state, which the Court is bound to follow."

the light of the wording of the court's charge concerning negligence, if any, of Cuban American, demonstrates the character of negligence which the jury must have found when it found Cuban American negligent: No question of strict or vicarious liability of Cuban American as owner or possessor of the switching station was even propounded.[16] The only negligence referred to in the charge—and thus that could have been found by the jury—was "actual".[17]

The plaintiff's [Locicero's] relationship to Cuban American was that of an invitee. It is generally held that one who is on premises in the performance of his duty occupies the status of invitee or business visitor with respect to the degree of care owed him by the owner or person in charge. Generally the degree of care owed an invitee is that of ordinary and reasonable care commensurate with the particular circumstances involved, and he who breaches such a duty, is answerable to the invitee for damages sustained as a result thereof. Reasonable care includes the duty of warning an invitee of known dangerous conditions which might imperil his safety. * * This duty includes that of exercising reasonable care to keep the premises in a reasonably safe and suitable condition, or of warning invitees or business visitors of hidden or concealed perils of which he knows or should know in the exercise of reasonable care, so that those whom he has invited to enter upon or use the property, shall not be unnecessarily or unreasonably exposed to danger. * * *

The very highest degree of care practicable to avoid injury to everyone is required of those who make use of such a dangerous agency as high voltage electric current. This is due to the fact that electricity gives no warn-

---

16. One commentator has recognized, "The case which is most persuasive for the recognition of rights to contribution and indemnity is that of the third person who has been held liable because of his relation to the premises or equipment used by the immediate employer and his employees, and who is not guilty of any actual negligence himself. This is the situation of the owner of property upon which the immediate employer creates a hazardous condition." McCoid, The Third Person in the Compensation Picture: A Study of the Liabilities and Rights of Non-Employers, 37 Texas L. Rev. 389, 452 (1959). On the other hand, and more akin to the instant case, McCoid observed:

[W]here * * * the employer's negligence has consisted of the use of unsafe equipment or conditions on the premises where the employer was engaged in the performance of a contract for the third person, the courts have denied contribution or indemnity to the third person whose own negligence in providing the equipment of creating the unsafe condition was an equally significant factor in the production of injury. * * * [I]t is most doubtful that either the general contractor or subcontractor or the owner of premises on which the contract is performed would be able to recover indemnification where he himself or his employees had created the hazardous condition and the "negligence" of the immediate employer of the injured worker consisted of merely failing to discover the hazard or to avoid it.

McCoid, supra at 440–41. The latter situation discussed above represents most closely the facts in this case.

See also Dykes, supra note 5, at 327, who suggests that even *Ryan* "involved the familiar situation of a person with a nondelegable duty, on whom a so-called vicarious liability lies."

17. "We come then to the question of whether the facts alleged in the complaint establish a right of indemnity under the law of Louisiana. The sole basis for indemnifying the United Gas Corporation would be that it had been held liable to the plaintiffs * * *. That very holding, however, convicts the United Gas Corporation of a wrong on its own part. * * * In Louisiana, indemnity is restricted to cases where the actual fault is attributed to one of the parties and the other is only technically or constructively at fault. *It is never applicable where both parties are actually in the wrong.*" United Gas Corp. v. Guillory, 5 Cir. 1953, 206 F.2d 49, 53 (emphasis added). Accord, Grigsby v. Coastal Marine Service of Texas, Inc., W.D.La.1964, 235 F.Supp. 97.

ing or knowledge of its deadly presence.
\* \* \*

Negligence, as the term is used, may be defined as the failure to do that which a person of ordinary prudence and intelligence would do under the same or similar circumstances. \* \* \* Negligence is the failure to use ordinary care.[18]

Even without this inferential approach that we use to discern what the jury must have found when it found Cuban American negligent, we conclude that by its very nature—and thus as a matter of law—Cuban American's negligence was "actual" under Louisiana standards.

Second, were Cuban American to recover over on a tort indemnity theory, it would be basing its recovery on the fault of General Electric—the breach of G.E.'s duty owed Locicero. Under the workmen's compensation laws, however, an employer cannot be held liable *in tort* on any theory that he has breached a duty owed his employee.[19] Section 34 of the Louisiana Compensation Act, LSA–R.S. 23:1032, provides:

> The rights and remedies herein granted to an employee or his dependent on account of a personal injury for which he is entitled to compensation under this Chapter shall be exclusive of all other rights and remedies of such

employee, his personal representative, dependents, or relations.

The legislative intent underlying this provision is clear: The injured employee is provided with a *certain* recovery, but the employer is likewise shielded from any tort action arising from the injury. Atchison v. May, 1923, 201 La. 1003, 10 So.2d 785; McLaughlin v. Boykin, La. App.1961, 127 So.2d 86; see Malone, Louisiana Workmen's Compensation Law and Practice § 361 (1951). Denying *contribution* by an employer-joint tort-feasor to a third party, one court set out rationale equally relevant to this indemnity theory:[20]

> The law of this state is clear to the effect that a third party tort-feasor cannot circumvent the immunity from tort actions enjoyed by an employer and obtain contribution from him as a result of his concurrent negligence.[21] The remedy of the employee against his employer is exclusively relegated to the terms of the Compensation Statute, and a third party tort-feasor who injures the employee cannot obtain contribution from the employer and thus circumvent the statutory immunity set up between the employer and the employee.

Gros v. Steen Production Serv., Inc., La. App.1967, 197 So.2d 356, 360.[22] Thus, in

---

18. "The right to indemnity does not exist in favor of a joint tortfeasor whose act or failure in the performance of a duty was a contributory cause of the accident, and there is no right to indemnity where the liability of the one seeking it cannot be regarded as secondary, vicarious, or derivative. Lee v. City of Baton Rouge, 243 La. 850, 147 So.2d 868; Second Church of Christ Scientist v. Spencer, 230 La. 432, 88 So.2d 810, \* \* \* Travelers Insurance Co. v. Hardward Mutual Cas. Co., La.App. 3 Cir., 186 So. 2d 185 \* \* \*." Hebert v. Blankenship, La.App.1966, 187 So.2d 798, 803.

19. "A right to indemnity based on a joint tort-feasor relationship is not available because the employer's liability to the employee, exclusive under the compensation act, is not in common with the third party's liability." Note, Contribu-

tion and Indemnity: The Effect of Workmen's Compensation Acts, 42 Va.L.Rev. 959, 974 (1956).

20. Indemnity has been described by one court as merely an "extreme form of contribution." Slattery v. Marra Bros. Inc., 2 Cir. 1951, 186 F.2d 134, 138.

21. [Court's original footnote renumbered.] Sanderson v. Binnings Construction Company, 172 So.2d 721 (La.App., 1965); Hebert v. Blankenship, 187 So.2d 798 (La.App., 1966). See also Lambert v. Austin Bridge Company, 189 So.2d 752 (La.App., 1966).

22. See also Ocean Drilling & Exploration Co. v. Berry Bros. Oilfiled Service, Inc., 5 Cir. 1967, 377 F.2d 511, denying indemnity under maritime tort principles where the injured employees received benefits under the Longshoremen's & Harbor Work-

Halliburton Co. v. Norton Drilling Co., 5 Cir. 1962, 302 F.2d 431, 434, we recognized that "even if we were to agree with Halliburton that its fault was only passive or secondary, there is a serious doubt that this alone would be a sufficient ground for imposing an obligation to indemnify upon Norton, in view of the fact that the applicable workmen's compensation statutes have completely abolished an employer's *tort* liability for injuries to his employees." In Auld v. Globe Indemnity Co., W.D.La.1963, 220 F.Supp. 96, the court observed that tort indemnity has been denied on the "sound theory" that if any duties of the employer were breached they were duties of care owed the employee and that the only liability of the employer for these breaches would be for compensation: "The Louisiana Workmen's Compensation Statute exempts the employer from any duty to pay any tort damages for his negligence committed against his employee. His sole obligation is an absolute duty to pay Workmen's Compensation whether there was any fault on his part or not." 220 F.Supp. at 101. And the Louisiana Court of Appeals, in Sanderson v. Binnings Constr. Co., La.App.1965, 172 So.2d 721, held that a workmen's compensation employer could not under Louisiana law be considered a joint tort-feasor. The employer's liability arises only through contract; since the employer cannot be sued in tort by its employee, it cannot be a joint tortfeasor and cannot be held for indemnity.[23]

An analogous situation is presented where the third-party defendant is immune from tort liability to the original plaintiff by virtue of some legal principle other than that grounded upon workmen's compensation laws. For example, in Johnson v. Housing Authority of New Orleans, La.App.1964, 163 So.2d 569, parents of a minor who had fallen from a second balcony sued the owner and lessor for failure to maintain safe premises. The court denied the landlord's third-party claim against the parents of the minor for contribution or indemnity on the ground that the parents were immune from suit by their child:

Third party plaintiffs are not entitled to the indemnity which enables a tortfeasor liable only technically to recover the entire amount of his loss from a tort-feasor liable primarily. * * *

Even supposing, but certainly not deciding, that the parents were negligent and that their negligence proximated the accident or was a contributing or concurrent cause, the third party

ers' Compensation Act, 33 U.S.C. § 901 et seq.:

It is thus apparent that the Act's exclusive liability provision effectively abrogates any independent tort liability of the employer to its employees, thereby eliminating any basis which may have existed for indemnification on a tort theory. Thus, while the employer may continue, even in spite of the exclusive liability provision of the Act, to remain liable for indemnity on the basis of an express or implied contractual obligation, in the absence of such obligation, as here, there simply exists no underlying tort liability upon which to base a claim for indemnity against the employer. See United Air Lines, Inc. v. Wiener, 9th Cir. 1964, 335 F.2d 379, 402–404, cert. dismissed, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549; Halliburton Co. v. Norton Drilling Co., supra, 302 F.2d at 434; Brown v. American-Hawaiian S.S. Co., 3d Cir. 1954, 211 F.2d 16, 18; American

Mut. Liab. Ins. Co. v. Matthews, 2nd Cir. 1951, 182 F.2d 322, 323–336. [377 F.2d at 514–515.]

23. Kiefer, supra at 551, does suggest a possible exception to this general rule, i. e. implied indemnity arising from the relationship of the parties. "Only if the employer and the third party stand in a special legal relationship, such as principal-agent or bailor-bailee, which, in the light of all the circumstances, clearly indicates an intent or an assumed responsibility by the employer to indemnify the third party for damages awarded to an injured employee, should the courts of Louisiana allow a recovery over. Recovery over in this instance would not violate the restrictive language of the exclusive-remedy clause of the Louisiana Workmen's Compensation Act."

Since we find no such "special legal relationship" here, we need not further explore this possible exception.

plaintiffs are entitled neither to indemnification nor enforcement of contribution from the parents. A child who is not emancipated cannot sue either parent during the continuance of their marriage when the parents are not judicially separated. * * * To allow the defendants herein to prosecute their demands for indemnification or contribution against the parents would in effect be investing a wrongdoer, as against the co-tortfeasor, with a greater right than the tort victim has. The parents may urge their immunity from suit against the demands of its co-tortfeasor as well as they could have urged it against any claim asserted by the child. 163 So.2d at 570.

We find an even stronger case for denying indemnity in the workmen's compensation situation. "The reasons for disallowing interspousal suits, for example, do not appear to be as strong a basis for denying contribution as the creation of an exclusive statutory remedy under a workmen's compensation act, which substitutes liability without fault for common-law negligence and is clearly substantive rather than procedural in nature." Note, Contribution Among Joint Tortfeasors When One Tortfeasor Enjoys a Special Defense Against Action by the Injured Party, 52 Cornell L.Q. 407, 416 (1967). As Kiefer, supra at 549, writes, "Jurisprudential recognition of non-contractual indemnity beyond the area of pure vicarious liability would present a judicial attack on the legislative determination contained in the exclusive-remedy provision of the Act."

### III.

■■ Because we hold Cuban American not entitled to indemnity from G.E. we also reverse the district court's judgment dismissing Electric Mutual's claim for intervention. The district court recognized that the jury's finding that Cuban American was negligent and

Locicero was not contributorily negligent "would entitle Electric Mutual to a judgment in its favor against the original defendants." However, recognizing that rendition of a judgment in favor of Electric Mutual and a judgment over on behalf of Cuban American "would serve no useful purpose and would constitute merely a setoff of one against the other", the court simplified matters by dismissing Electric Mutual's intervention claim. Under the Louisiana Statute, LSA–R.S. 23:1101–03, an employer who has paid compensation may sue a third-party tortfeasor "to recover any amount which he has paid or become obligated to pay as compensation to any injured employee or his dependent". Negligence on the part of the employer does not bar this recovery. United Gas Corp. v. Guillory, 5 Cir. 1953, 206 F.2d 49, 54. Thus, giving full weight to the district court's actual holding on this point, but reversing its judgment, we hold that Electric Mutual is entitled to recover compensation expended on behalf of Locicero.

The district court's judgment is reversed and the cause remanded for reinstatement of Electric Mutual's claim and rendition of a judgment in its behalf consistent with this opinion.

### ON PETITION FOR REHEARING EN BANC

#### PER CURIAM:

The petition for rehearing is denied and, no member of the panel or any judge in active service having requested that the Court be polled, the petition for rehearing en banc is also denied. We have considered the opinion of the Louisiana Supreme Court in Minyard v. Curtis Products, Inc., 1967, 251 La. 624, 205 So. 2d 422, handed down subsequent to our decision in this case, and conclude that it does not affect the result reached in our original decision.